Robert R. Fischer
FEDERAL DEFENDERS OF EASTERN WASHINGTON AND IDAHO
10 North Post, Suite 700
Spokane, Washington 99201
(509) 624-760611-169

Attorneys for Defendant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
(HONORABLE THOMAS O. RICE)

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | CR-12-00138-TOR |
| vs. | ) | Response to the Presentence Investigation Report |
| MICHAEL JAMES PAUCKERT, | ) | |
| Defendant. | ) | |

TO: MICHAEL C. ORMSBY, UNITED STATES ATTORNEY
TIMOTHY J. OHMS, ASSISTANT UNITED STATES ATTORNEY
SHANE MOORE, UNITED STATES PROBATION OFFICER

MICHAEL JAMES PAUCKERT, through counsel, Robert R. Fischer for the Federal Defenders of Eastern Washington and Idaho, submits the following response and objections to the presentence investigation report (PSR):

## I. RESPONSES/ OBJECTIONS:

**A.** **BASE Offense Level of 20.** The Defendant believes the base offense level is accurate and does not object.

**B.** **Specific Offense Characteristic Enhancement Pursuant to USSG Sec. 2K2.1(b)(3)(B).** The Defendant believes the enhancement

Response to Presentence
Investigation Report      1

under this section and added to the base offense level base for a 2 level increase at para. 43. Of the PSI is accurate.

**C. Objection to 4 Level Increase "because the Defendant used or possessed the firearm in connection with another felony". "**[1] The PSI at Page 13, Par. 44, provides for a 4 level increase pursuant to USSG Sec. 2K2.1(b)(6)(B) based upon "the defendant used or possessed any firearm or ammunition in connection with another felony. The basis for this adjustment is a Washington State conviction that dates back to 2006, in connection with a residential burglary where " . . the defendant [Mr. Pauckert], during the burglary, stole six firearms and several rounds of ammunition." *Id.* Yet, the Five Count Indictment in the instant case alleges that all acts of the Defendant began between on or about May 3, 2012 and May 25, 2012, except for the alleged SORNA violation, that occurred between on or about April of 2012 and May 23, 2012. Thus, all conduct relevant to the instant indictment occurred no sooner that April of 2012. These facts are ultimately dispostive, as more fully discussed below.

It is also important to note that the .38 Special Smith&Wesson revolver that Mr. Pauckert possessed had no nexus to the 2006 burglary, as it was not one of the six firearms stolen back in 2006. In fact, Mr. Pauckert found the .38 Special on Craigslist and traded a gold ring for it

---

[1] Therefore the Defendant also objects to the Adjusted Base Offense Level/ Total Offense Level.

Response to Presentence
Investigation Report　　　　2

a short time before he was arrested on May 23, 2012[2].

The government take exception to the PSI's application of the proposed 4 level increase in its "Response To Presentence Investigation Report" (ECF NO. 43 , hereinafter "Government's Response"). "The government believes there is conflicting authority over the application . . . .based on the Defendant's past possession of a firearm in connection with another felony". As its authority the government cites to two Ninth Circuit cases; the first being *United States v. Nichols*, 464 F.3d 1117 (9th Cir. 2006). Actually, the issue formulated by the sentencing court in Nichols was, wether or not the firearm used in a prior felony offense has to be the same firearm as set forth in the indictment, and thus the offense of conviction. The Court of Appeals upheld the lower court's ruling that the firearm utilized for purposes of the enhancement was not restricted to the firearm alleged in the indictment, but on different grounds. The Court held that the possession of the firearm, not named in the instant indictment, but used in an earlier crime that was part of the defendant's "relevant conduct" to the instant offense, could be used to

---

[2] Interestingly, the trade was accomplished on or about May 3, 2012, with the assistance of one of the witnesses in the instant case, the brother of Celsey Dodge, Tyson Dodge, whom Mr. Pauckert was living with in her mother's house, at the time of his arrest (See PSI at 8, para 20).

Response to Presentence
Investigation Report             3

enhance his sentence under Sec. 2K2.1(b)(5) - now Sec. 2K2.1(b)(6)(B). As noted by the government in its response, the Nichols Court did leave open the issue wether an enhancement would be proper in a case where prior conduct was unrelated. However, the Defendant agrees that the Ninth Circuit's decision in *United States v. Bell*, only bolsters the holding in *Nichols*, and does not extend its reasoning pursuant to other Circuits that *Nichols* considered, but did not follow. (Citations omitted, See Government's Response at 3). In this regard, it appears the Ninth Circuit was unwilling to extend the enhancement's reach to unindicted conduct. This could be for several reasons. First, most if not all the enhancements in USSG Sec. 2K2.1 apply to th "instant offense". For example, the enhancements for number of firearms, and if any firearm was stolen, or had and altered or obliterated serial number, applies only to the instant offense. See USSG Sec. 2K2.1(b)(1) and (4) respectively. Second, recognizing the holding in *United States v. Davis*, 360 F.3d 901 (8th Cir. 2004) (including firearm in commission of non-contemporaneous conduct 10 days earlier to the instant offense), there still be must some reasonable restrictions on applications of the subject guidelines that prohibit reaching far back in time to a prior conviction to enhance the base offense for the instant offense. It is a well accepted axiom in law that a statute or guideline must be read as a whole when construing its meaning. (Citation omitted) c.f. .

    Because the defendant agrees with government that the 2006

residential burglary cited in the PSI does not constitute relevant conduct under USSG Sec. 1B1.3(a)(1), the 4 point enhancement should not apply. Moreover, the defendant does agree that it logically follows that the 20006 burglary should be applied to Mr. Pauckert's criminal history calculation instead, so that 3 points should be added under USSG Sec. 4A1.1(a).

**D. Objection to 2 Level Increase "as the Defendant willfully obstructed or impeded, or attempted to obstruct or impeded the administration of justice pursuant to USSG Sec. 3C1.1".**

In order to support its own conclusions proved in the PSI at 8, para 34., regarding the obstruction enhancement, the PSI writer points to excerpts of letters written to his girlfriend, Ms. Dodge, after his arrest on May 23, 2012. [3] The letters must be taken in the context they were written. This is vastly important because "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness." See USSG Sec. 3C1.1, <u>Commentary</u>, Application Note 3. " Application Note 4 set forth examples of the types of conduct to which this adjustment is intended to apply . . . [a]lthough the conduct to which this adjustment is not subject to precise definition comparison of the examples set forth in application Notes 4 and 5 should assist the court in determining wether the application of this adjustment is warranted in a particular case." *Id*.

---

[3] See PSI at 10-11, para. 28-32, dated 12//0412, 06/14/12, 06/15/12, 06/26/12, and 06/28/12.

Response to Presentence
Investigation Report            5

Application Note 5 sets forth examples of less serious forms of conduct to which this enhancement is not intended. *Id*. Both lists are non-exhaustive. *Id*. From these advisements, the Commentary suggests that both lists must be "material". The definition of "material", found in Application Note 6, means evidence, fact, statement, or information if believed, would tend to influence or affect the issue under determination. *Id*. Also see *United States v. Acuna*, 9 F.3d 1442 (9th Cir. 1993) (Factual determinations made in the application of section 3C1.1 are reviewed for clear error). *United States v. Ford*, 989 F.2d 347, 351 (9th Cir.1993) (The legal conclusion that Defendant's conduct constituted an obstruction of justice within the meaning of section 3C1.1 is reviewed de novo).

Given the above, each of Mr. Pauckert's alleged offending statements within each letter must be parsed to determine wether any fit the definition of obstructive conduct.

*December 14, 2012, letter*. This advisement to Ms. Dodge does not appear to diffuse the investigation by law enforcement of his actions, but those of Ms. Dodge, telling her to minimize her actions. Certainly, given the nature and extent of their relationship, and that he stayed with the Dodge family for so long, a reasonable person would wonder what Ms. Dodge's involvement was in Mr. Pauckert's absconding, and hiding in the Dodge's residence. In fact, Mr. Pauckert seems to encourage Ms. Dodge in taking the "high road" by telling her that she didn't know he was on the run, that he stayed at the Dodge residence only a few nights, and

that when she actually found out what the charges against him were, "did the right thing & called the cops & had [him] arrested". This story, if it panned out, would not impede the investigation of his wrongdoing, but a potential investigation of Ms. Dodge for harboring a fugitive. The undersigned however is unaware of any such investigation, or proposed investigation.

*June 14, 2012, letter.* This letter encompasses only two of Mr. Pauckert's statements relevant to the alleged obstruction enhancement; the first having to do with the firearm that Tyson Dodge provided his own identification in order to successfully consummate the trade. It appears, without more, that Mr. Pauckert giving away or otherwise getting rid of his personalty. He obviously did not want the firearm to "go to waste" because of its historical value. Even if he simply "set up the deal", as Mr. Pauckert suggests, this does not relieve him of the liability for possessing it. As for the printers that Mr. Pauckert asked Ms. Dodge to get rid of, because "they're pieces of junk & need to be thrown away", they were not necessary pieces of evidence to convict him under 18 U.S.C. Sec. 1028(a). See PSI at 7, para. 16; at 9, para. 23; at 10, para. 26.

*June 15, 2012, letter.* This letter is asking Ms. Dodge simply to gather reference letters, perhaps to be used at a sentencing hearing or bail hearing. As the PSI states, any reference to use of the internet, contact with Ms. Dodge's child, or out of state, would have no bearing on the

Response to Presentence
Investigation Report        7

instant charges. The SORNA violation, ostensibly, had already been committed.

*June 26, 2012, letter.* This appears to be a responsive communication to Ms. Dodge. Regardless of whether Ms. Dodge told Mr. Pauckert that her brother actually took "entitlement" to it (the weapon) found in his hamper, Mr. Pauckert knows that if they (most likely law enforcement) retained the firearm, instead of giving it to Tyson, Mr. Pauckert is "guilty". Any other interpretation of the remainder of the excerpt is pure speculation.

*June 28, 2012, letter.* What can be interpreted as yet another responsive communication, most of this excerpt has to do with Ms. Dodge's mother calling the police and doing the 'right' thing; similar to the December 14, 2012 letter discussed above. As for the "device", and after "it" had been seized, photographed and examined by law enforcement, one can certainly assume the forgone conclusion that anything Ms. Dodge told the police about "it" would change their minds as to what it was in actuality.

## II. CONCLUSION:

Based upon the above, the Adjusted Offense Level for Count Group Level 1, Count 1 should be 22, not 28. This is based upon a BOL of 20, an increase of 2 points under U.S.S.G. Sec. 2K2.(b)(3)(B). The same is true for the correct guideline calculation in Count 2. The PSI's calculations for count 5 in Group 2 of the PSI should be a 12 not 14.

Given the grouping rules there should be no increase in the total offense level. After a decrease for acceptance and early acceptance of responsibility under U.S.S.G. Sec. 3E1.1(a) and (b), Mr. Pauckert's Total adjusted Offense level should be no more that 19 (22-3=19). Given Mr. Pauckert's Criminal History Category V, (adding 3 points to the his previously determined 8 points - See PSI at 22, boosting his Category to the next Level) his Guideline range should be no more than 57-71 months, placing him in Zone D.

Dated: September 10, 2013

Respectfully Submitted,

S/ Robert R. Fischer
WA 21839
Attorneys for Michael Pauckert
Federal Defenders of
Eastern Washington and Idaho
10 North Post, Suite 700
Spokane, Washington 99201
Telephone: (509) 624-7606
Fax: (509) 747-3539
Email: Robert_Fischer@fd.org

Response to Presentence
Investigation Report                9

# CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: TIMOTHY OHMS, Assistant United States Attorney.

S/ Robert R. Fischer
WA 21839
Attorneys for Michael Pauckert
Federal Defenders of
Eastern Washington and Idaho
10 North Post, Suite 700
Spokane, Washington 99201
Telephone: (509) 624-7606
Fax: (509) 747-3539
Email: Robert_Fischer@fd.org

Response to Presentence
Investigation Report          10